IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| ELSWORTH MARK BERTHELOT | § | |
| v. | § | CIVIL ACTION NO. 9:06cv216 |
| | | (Crim. No. 9:03cr46) |
| UNITED STATES OF AMERICA | § | |

MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT

The Movant Elsworth Berthelot, proceeding *pro se*, filed this motion to vacate or correct sentence under 28 U.S.C. §2255 complaining of the legality of his conviction. This Court ordered that the case be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

Berthelot pleaded guilty on February 13, 2004, to the offense of being a felon in possession of a firearm. He was placed on notice at the plea hearing that he could meet the criteria for sentencing as an armed career offender under 18 U.S.C. §924(c). On July 19, 2004, Berthelot was sentenced as an armed career offender to 198 months in prison, followed by five years of supervised release.

Berthelot then filed a notice of appeal on July 27, 2004. The basis of the appeal was a challenge to a search of his house, which was done on April 11, 2003. Berthelot had filed a motion to suppress, which was denied. On appeal, Berthelot argued that his then-wife, Sheila Berthelot, lacked actual or apparent authority to consent to the search of the house, but the Fifth Circuit rejected this argument. U.S. v. Berthelot, 138 Fed.Appx. 700 (5th Cir., July 18, 2005, *cert. denied*, 547 U.S. 1042 (2006) (not selected for publication in the Federal Reporter), *citing* U.S. v. Shelton, 337 F.3d 529, 536-37 (5th Cir. 2003).

Berthelot's Section 2255 motion contends that he received ineffective assistance of counsel from his attorney, Joseph Martin, that the search was unlawful, counsel's representation of Sheila Berthelot in a prior, unrelated divorce proceeding created a conflict of interest, Sheila was an unreliable witness and was coerced into signing the search form, and the plea of guilty was involuntary. The Magistrate Judge ordered the Government to answer Berthelot's petition, and the Government has filed a motion to dismiss. Berthelot has filed a response to this motion, as well as a motion to strike and a motion to take judicial notice of facts.

After review of the pleadings and records in the case, the Magistrate Judge issued a Report on August 20, 2007, recommending that the motion to dismiss be granted and that Berthelot's petition be dismissed. The Magistrate Judge set out the legal standards applicable in Section 2255 proceedings and recounted the testimony which was given at the suppression hearing. The Magistrate Judge concluded that: (1) Berthelot failed to show that Martin rendered ineffective assistance of counsel in calling witnesses, because he did not demonstrate that any witnesses whom Martin could have called would have affected the outcome of the suppression hearing; (2) that Martin did not act ineffectively in failing to offer the offense report because Berthelot's reliance on the offense report was based on a typographical error; (3) the fact that the property had been partitioned in 1997 was of little relevance because Sheila still had actual or apparent authority to consent to a search; and (4) the failure to obtain telephone records was not ineffective absent any evidence of what these records would have showed or how they would have affected the hearing.

The Magistrate Judge also concluded that (5) Martin's comments at sentencing that "you need to be a wizard to understand this stuff" referred to the U.S. Sentencing Guidelines and did not show a lack of knowledge of constitutional law, and thus were not evidence of ineffective assistance; (6) any failure to cross-examine Sheila in the way that Berthelot deemed appropriate did not affect the outcome of the hearing; and (7) the affidavit from Tonda Curry, Berthelot's appellate attorney, saying that Martin had failed to develop the record properly and had a "likely winnable issue" was not sufficient to meet constitutional standards for showing ineffective assistance of counsel.

The Magistrate Judge determined that Berthelot's challenge to the legality of the search itself was foreclosed by the Fifth Circuit's decision on direct appeal, upholding the legality of the search. U.S. v. Kalish, 780 F.2d 506, 508 (5th Cir.), *cert. denied*, 476 U.S. 1118 (1986) (issues raised and disposed of on direct appeal are not considered in Section 2255 motions). The Magistrate Judge went on to reject Berthelot's claim that a conflict of interest existed because Martin had represented Sheila in a divorce proceeding which was long since over.

Next, Berthelot asserted at great length that Sheila was an unreliable witness and that she was coerced into signing the consent form. The Magistrate Judge noted that Sheila was "not exactly an ideal witness" for the Government, but that her credibility was not the issue at the hearing. Rather, the Magistrate Judge stated, the undisputed facts showed that Sheila was married to Berthelot and had lived in the house until a few days before the search took place. These facts gave her apparent if not actual authority to consent to the search. Berthelot's challenge to her credibility is simply another way of challenging the validity of the search itself, and as such is foreclosed.

In his final claim. Berthelot asserted that his guilty plea was involuntary. The Magistrate Judge reviewed the transcript of the guilty plea proceeding and concluded that Berthelot's own testimony at this proceeding showed that his plea was voluntary. The Magistrate Judge therefore recommended that Berthelot's motion to vacate or correct sentence be denied.

Berthelot filed objections to the Magistrate Judge's Report on September 4, 2007. In his objections, he first raises the issue of Sheila's credibility, and again says that he had partitioned the property and that he had taken Sheila's keys away a few days earlier. However, as the Magistrate Judge stated, these facts are not relevant to the central issue at the suppression hearing, which was whether or not Sheila had actual or apparent authority to give a valid consent to the search. Actual authority requires a finding of proof that the consenting party and the party challenging the search mutually used the property searched and had joint access to and control of it for most purposes, so that it is reasonable to recognize that either user had the right to permit inspection of the property and that the complaining co-user has assumed the risk that the consenting co-owner might permit

the search; a finding of apparent authority requires proof that the searching officers reasonably, though erroneously, believed that the consenting person had authority to do so. United States v. Jaras, 86 F.3d 383, 389 (5th Cir. 1996).

As the Magistrate Judge concluded, the undisputed evidence showed that Sheila had apparent, if not actual, authority to consent to the search on April 11, 2003. Berthelot's objections on these point are without merit.

Next, Berthelot complains about the effectiveness of counsel. He points to the "offense report which no one wanted to use," and says that the Magistrate Judge erred in saying that it contained a "typographical error." According to Berthelot, the report shows that the weapons were discovered at 3:25 p.m., but that the consent was given after 3:45 p.m. As the Magistrate Judge observed, the offense report says that the deputies arrived at 3:45 p.m., which is clearly a typographical error. Although Berthelot criticizes the Magistrate Judge for this conclusion, he fails to explain how the guns could have been discovered 20 minutes before the deputies even arrived. All of the evidence in the case, including Berthelot's own statement, shows that the deputies arrived at 2:45 p.m. Berthelot has not shown that but for counsel's failure to offer the offense report, the result of the proceeding would probably have been different. His objection on this point is without merit.

Berthelot says that Martin had to be admonished four times to question witnesses from the podium. This fact fails to show that Martin rendered constitutionally ineffective assistance. He says that counsel failed to offer a single issue, but presents nothing to indicate what Martin could have offered to controvert the fact that Sheila had actual or apparent authority to consent to the search. He argues that Sheila was no longer living there (although she had left less than a week earlier and not returned), that she no longer possessed keys, that she had no property interest, that she was "not engaged in an on-going criminal enterprise as in Shelton," and that she was "not welcome there," although he had apparently been calling around in an effort to locate her. Whether or not these facts are relevant to Sheila's actual authority to consent to a search, it is clear that the law enforcement

officials would have reasonably believed that she could do so, and so the search was valid under the doctrine of apparent authority.

Similarly, Berthelot points to his safe, for which he says that he had the only key. However, the evidence at the suppression hearing showed that the combination to the safe was written on a piece of paper on top of the safe. More pertinently, Sheila told the officers that she kept some property in the safe. Once again, whether or not Sheila had actual authority to consent to a search of the safe, the officers would have reasonably believed that she could do so, and so the search of the safe was likewise valid under the doctrine of apparent authority.

Berthelot complains that Martin offered no evidence at the suppression hearing, that Martin did not come and visit him in jail after he was moved to Tyler, and did not even take phone calls from him. However, Berthelot makes no showing that but for these derelictions, the result of the proceeding would probably have been different. *See* Del Toro v. Quarterman, --- F.3d ---, slip op. no. 06-40043 (5th Cir., Sept. 4, 2007) (not yet published) (requiring a habeas petitioner to "sufficiently undermine confidence in the outcome to illustrate that counsel's deficient performance caused the outcome of the proceeding to be unreliable or the proceeding to be fundamentally unfair.") His objections on this basis are without merit.

The Magistrate Judge concluded that the evidence showed that the officers conducted a protective sweep of the house after Berthelot was arrested. Berthelot complains that the officers remained standing, outside the house, after the arrest had taken place, but the evidence at the hearing showed that the officers were awaiting the arrival of Sheila Berthelot, to secure her consent for a search of the premises. Berthelot appears to complain that Martin rendered ineffective assistance for not challenging this, but offers nothing upon which to base a conclusion that such a challenge had any possibility of success. His objection on this ground is without merit.

Berthelot goes on to list items which he says that Martin had in his possession at the time of the suppression hearing, including Sheila's contradictory written statements, her testimony before a grand jury in 1998, the time which Martin spent with Berthelot and Sheila discussing their defense,

information provided by Shane Amen, the offense report, a supplemental report, the "defective indictment," the case of Apprendi v. New Jersey, the fact that a "protective sweep" of the house was done although Berthelot was arrested outside, the alleged blackmail attempt by Sheila against persons named Eric and Renae Silas, the partition agreement regarding the property, the divorce petition filed by Sheila in October of 2003, and a deposition from an insurance claim filed by Sheila regarding a break-in of the house, in which the insurance company attorney said that Sheila had lied. Many of these items, including Sheila's contradictory statements, the supplemental report, and the partition agreement, were in fact offered into evidence at the suppression hearing, as detailed by the Magistrate Judge. Berthelot has not shown that but for the failure to offer the remainder of these items, the result of the proceeding would probably have been different. His objections on these grounds are without merit.

In connection with the information provided by Amen, Berthelot complains that the alleged "protective sweep" went outside the bounds of propriety. As the Magistrate Judge explained, a protective sweep of a house may be done even if the arrest takes place outside, if the police have reasonable grounds to believe that there are other persons present inside who may present a security risk. U.S. v. Watson, 273 F.3d 599, 603 (5th Cir. 2001); U.S. v. Maldonado, 472 F.3d 388, 394-95 (5th Cir. 2006) (police need not have certain knowledge that there are other persons in the house). In this case, as the Magistrate Judge said, the law enforcement agents testified that after they knocked on the door, a period of time elapsed, during which they heard voices and footsteps in the house. The evidence which Berthelot presented indicated that he was walking around talking to Lisa Sherrad, Sheila's sister, on a cell phone, which the Magistrate Judge said could account for the footsteps and voices; however, this does not show that the officers were unjustified in carrying out a protective sweep of the house after the arrest. In addition, the Magistrate Judge concluded that the duration of the protective sweep of Berthelot's house did not show a constitutional violation. *See* United States v. Hauk, 412 F.3d 1179, 1185 (10th Cir. 2005) (five-to-10 minute protective sweep not improper); United States v. Mendez, 431 F.3d 420, 428 (5th Cir. 2005) (entry into house by

consent, followed by protective sweep lasting 35 to 45 minutes, not improper). Berthelot's objections on this basis are without merit.

Berthelot next says that the indictment provided a possible sentence of up to ten years, and a fine not to exceed $250,000.00, and that he pleaded guilty to this indictment, nothing more or less, but that he was told at the plea hearing that he could face up to life in prison. In fact, the indictment specifically states, in the penalty provision, as follows:

> If it is shown that the defendant has three previous convictions by any court for a violent felony or a serious drug offense, or both, committed on occasions different from one another - Imprisonment of 15 years to life, a fine not to exceed $250,000.00 or both; a term of supervised release of at least three years but not more than five years.

Berthelot was placed on notice at the plea hearing that if he fell within the armed career criminal provision, he faced up to life in prison. This comported with the above paragraph in the indictment. Berthelot's contention that the indictment did not give him notice that he faced up to life in prison is incorrect and his objection on this point is without merit.

Berthelot argues that he never stipulated to any prior offenses meeting the standards of the Armed Career Criminal provision of the statute. At the plea hearing, Berthelot acknowledged that he had been convicted of distribution of controlled dangerous substances in September of 1979, which he said was under the Youthful Corrections Act; he had been convicted of distribution of cocaine in Tangipahoa Parish in Louisiana, in November of 1988; he had been convicted of possession of a firearm by a convicted felon in Tangipahoa Parish in November of 1988; he had been convicted of theft of property in St. Tammany Parish, Louisiana, in January of 1989; and he had been convicted of theft in Angelina County, Texas, in October of 1999. His objection on this point is without merit.

Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), held that other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proven beyond a reasonable doubt. In this case, the relevant facts

were prior convictions, and the statutory maximum was life in prison. Berthelot has not shown an Apprendi violation and his objections on this point are without merit.

In a lengthy conclusion, Berthelot reiterates the complaints which he has made throughout this proceeding, including complaints about the protective sweep, challenges to Sheila Berthelot's credibility, assertions that the offense report demonstrates that the officers violated the Constitution, allegations that Martin rendered ineffective assistance as shown by counsel's comment that "you need to be a wizard to figure this stuff out," assertions that Sheila could not consent to the search of the safe, and complaints that Martin did not timely seek a continuance or use a memo he received from another attorney, John Tunnell, regarding the search of Berthelot's home. These complaints simply repeat the allegations which he has made, which were comprehensively addressed by the Magistrate Judge's Report.[1] Berthelot's objections are without merit.

The Court has conducted a careful *de novo* review of the pleadings in this cause, including the original and amended motion to vacate and attached exhibits, Berthelot's documents filed in supplementation of the record, the motion to dismiss filed by the Government, Berthelot's responses thereto, the Report of the Magistrate Judge, the Movant's objections thereto, and all other pleadings, documents, and records in the case. Upon such *de novo* review, the Court has concluded that the Report of the Magistrate Judge is correct and that the objections of the Movant are without merit. It is accordingly

ORDERED that the Movant's objections are overruled and that the Report of the Magistrate Judge is ADOPTED as the opinion of the District Court. It is further

---

[1] Berthelot also appears to claim that he received ineffective assistance from Tonda Curry, his appellate attorney. Such a claim is raised for the first time in Berthelot's objections and thus is not properly before the district court. Finley v. Johnson, 243 F.3d 215, 218 n.3 (5th Cir. 2001), *citing* United States v. Armstrong, 951 F.2d 626, 630 (5th Cir. 1992). Even were the claim properly before the Court, Berthelot has wholly failed to show that he received ineffective assistance of counsel on appeal. *See* Smith v. Robbins, 528 U.S. 259, 285 (2000) (to show ineffective assistance of counsel on appeal, petitioner must show that counsel was objectively unreasonable in failing to discover non-frivolous issues and file a merits brief raising them, and also a reasonable probability that but for this failure, he would have prevailed on appeal).

ORDERED that the Government's motion to dismiss (docket no. 10) is GRANTED and that the above-styled motion to vacate or correct sentence be and hereby is DISMISSED with prejudice. It is further

ORDERED that any and all other motions which may be pending in this action are hereby DENIED.

So **ORDERED** and **SIGNED** this **10** day of **September, 2007.**

_____
Ron Clark, United States District Judge